RECEIVED
MAR - 7 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| BAKER MANUFACTURING CO., INC. | CIVIL ACTION NO. 1:15-1630 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| NEXT TECHNOLOGIES, INC. | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the court is "Defendant Next Technologies Inc.'s Motion to Dismiss Plaintiff Baker Manufacturing Co., Inc.'s First Amended Complaint" (R. #24) wherein the defendant seeks to have the court dismiss with prejudice plaintiff's federal claim for dilution of trademark under 15 U.S.C. § 1125(c) and its deceptive trade practices claim under Louisiana Revised Statute 51:1401, et seq.

## ALLEGATIONS

Baker Manufacturing Company, Inc. ("Baker") makes the following allegations in its complaint and first amended complaint.[1] Baker is a corporation located in Pineville, Louisiana. Baker manufactures, markets and sells contemporary office furnishings with horizontal work surfaces and an adjustable elevation feature which are sold and distributed in the United States and Canada. In 1990, Baker engineered height-adjustable tables and desks.

Baker is also the owner of the trademark "NEXT" (hereinafter referred to as the "NEXT mark"). The NEXT mark is registered with the United States Patent and Trademark Office

---

[1] R. #1 and 19.

1

(Registration No. 3,534,505); the NEXT mark is also registered with the State of Louisiana as a Trademark.

One particular product manufactured and sold by Baker is the "NEXT" line of work tables which features two or more vertical supports that extend to vary the height of the horizontal work surface and allows "sit to stand" variations. These adjustable work tables are identified with the NEXT mark. Baker affixes its registered NEXT mark to its internet website, advertising, and packaging materials of the tables which are shipped throughout the United States.

Baker has expended significant resources to develop a market presence using the NEXT mark and in doing so has established significant recognition and substantial goodwill in the NEXT mark. Consequently, NEXT has received industry awards and recognition for quality office furniture.

Next Technologies, Inc. ("NTI") is a Texas corporation formed on February 14, 2012. NTI utilized ICANN to procure the internet domain name "NEXTDESKS.COM"; ICANN is an accredited registrar of GoDaddy.com, LLC ("Go Daddy").[2] NTI has a municipal address in Georgetown, Texas. According to NTI's website, it manufactures adjustable height desks under the following names: NextDeskTerra, NextDesk Terra Pro, NextDesk Air, NextDesk Air Pro, Next Desk L Series, NextDesk U Series, NextDesk Solo, NextDesk Solo Plus, NextDesk Up, NextDesk Fit, NextDesk Custom, and NextDesk Conference. Plaintiff maintains that each of these names infringes upon its legally protected trademark Next.

---

[2] GoDaddy is one of many commercial service providers that functions as internet domain registrars under accreditation of ICANN.

2

NTI offers its products for sale on the NTI website – http://www.nextdesks.com/models and identifies the product offerings with a representative picture of each product above its respective product name or identifier. All of the products shown there comprise at minimum a horizontal work surface and one or more vertical support means which are variable in length to adjust the height of said horizontal work surface. Baker maintains that a comparison of the products offered for sale by NTI to Baker's NEXT products would confuse a purchaser of office furniture by the similarity of the marks and the products associated therewith.

As of March 13, 2015, through its counsel, Baker has notified NTI that its use of the NextDesk name in association with an adjustable height workstation or desk was either a direct infringement or confusingly similar to Baker's NEXT office furniture products. Through several communications, Baker has demanded that NTI cease and desist from using any variation of NEXT or the NextDesk mark in conjunction with NTI's products. NTI has continued to advertise, offer for sale and sell its products under the mark or name NEXTDESK to Louisiana customers.

Baker maintains several claims with respect to NTI's use of the name and mark "NextDesk" which are as follows: (1) infringement under the Lanham Act,[3] (2) unfair competition,[4] (3) dilution of Trademark,[5] (4) Louisiana Trademark Infringement,[6] (5) Louisiana Unfair Competition,[7] and (6) Louisiana Trademark Dilution.[8]

---

[3] 15 U.S.C. § 1114.
[4] 15 U.S.C. § 1125(a).
[5] 15 U.S.C. § 1125(c).
[6] La. Rev. Stat. § 51:222.
[7] La.Rev.Stat. § 51:1405(A).
[8] La.Rev.Stat. § 51:223.1.

3

Baker seeks injunctive relief against NTI which would prohibit any further use of Baker's Trademark[9], including infringing on Baker's trademarks, false designations of origin, descriptions, and or NTI's business and/or products, engaging in unfair competition with Baker, diluting the distinctiveness of Baker's Trademarks, and injuring Baker's business reputation. Baker further seeks an order from the court for NTI to (1) destroy all print and other promotional materials which refer to NextDesk or variations thereof, (2) remove all online advertising, print advertising, or directory listings displaying the "NextDesk" name or any other business name incorporating any of Baker's Trademarks or any colorable imitations thereof, (3) cancel all domain names, corporate name and fictitious name registrations for any names which contain or comprise "NextDesk" or variations thereof as an element, (4) account for and pay to Baker all profits derived by NTI under either or any of the Baker marks and names, (5) pay damages sustained by Baker, including penalties, attorney's fees and costs, (6) comply with any injunctive relief available to Baker pursuant to 15 U.S.C. § § 1116, 1117, and 1118 and La. R.S. § 51:1409, and (7) pay treble damages or punitive damages, including Baker's costs and attorney's fees along with prejudgment and post-judgment interest.

## RULE 12(B)(6) STANDARD

Fed. R. Civ. P. 8(a)(2) requires that pleadings which state one or more claims for relief must contain "...a short and plain statement of the claim showing that the pleader is entitled to relief..." This "notice pleading" requirement is balanced against Fed. R. Civ. P. 12(b)(6), which

---

[9] Or any word, symbol, design, term and mark which is a colorable imitation of or confusingly similar to Baker's trademarks in connection with sale, offering for sale, advertising, promotion, or any other marketing of office furnishings.

4

provides that a court may dismiss one or more claims when the pleader fails to state a claim upon which relief may be granted.

For the purpose of considering a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled factual allegations as true and must view them in the light most favorable to the plaintiff.[10] The pleading must allege facts which, when taken as true, raise the pleader's claim for relief beyond the level of speculation or suspicion.[11] Conclusions of law or recitations of necessary elements of a claim will not suffice.[12]

The court's analysis is restricted to the pleading at issue, its proper attachments and matters of public record.[13] A complaint must be dismissed under Rule12(b)(6) when it fails to allege a valid legal claim upon which relief could be granted.[14] Moreover, dismissal is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[15]

## LAW AND ANALYSIS

*Trademark Dilution claims*

Defendant, NTI, maintains that plaintiff's petition fails to allege any facts that the NEXT mark is "widely recognized by the general consuming public."[16] Instead, NTI asserts that plaintiff

---

[10] In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007) (internal citations omitted).
[11] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).
[12] Papasan v. Allain, 478 U.S. 265 (1986).
[13] Financial Acquisition Partners LP v. Blackwell, 440 F.3d 278 (5th Cir. 2006) (internal citations omitted).
[14] Twombly, 550 U.S. at 555.
[15] Causey v. Sewall Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004)(quoting Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).
[16] See 15 U.S.C. § 1125(c)(2)(A).

5

relies on niche fame or market in its particular industry-- office interior products or furniture. NTI informs the court that the Trademark Dilution Revision Act ("TDRA") signed into law on October 6, 2006, clarified the fame requirement for federal trademark dilution claims by defining a "famous mark" as one that is "widely recognized by the general consuming public of the United States, as a designation of source of the goods or services of the mark's owner.[17] In Firefly Digital Inc., the court noted that "[d]ilution is a cause of action of marks—those marks with such powerful consumer associations that even noncompeting uses can impinge on their value."[18]

Baker relies on Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.,[19] which reasoned that a mark not famous to the general public is nevertheless entitled to protection from dilution where both the plaintiff and defendant are operating in the same or related markets so long as the plaintiff's mark possesses a high degree of fame in its niche market.[20] Baker further relies on the four factors in New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,[21] and 15 U.S.C. § 1125(c)(1)(A) for the court to consider which are as follows: (1) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered.

---

[17] 15 U.S.C. § 1125(c)(2)(A); see, e.g. Firefly Digital Inc. v. Google Inc., 817 F.Supp.2d 846, 866-67 (W.D. La. 2011)(dismissing plaintiff's federal dilution claim because the marks did not meet the "specific requirement that the marks be 'widely recognized by the general consuming public of the United States.'"
[18] Citing Board of Regents, University of Texas System ex rel. University of Texas at Austin v. KST Elec., Ltd., 550 FlSupp.2d 657, 673 (W.D. Tex. 2008) (internal citations omitted).
[19] 212 F.3d 157, 164 (3rd Cir. 2000).
[20] See also, Advantage Rent-A-Car, Inc. v. Enter. Rent-A-Car, Co., 238 F.3d 378, 380 (5th Cir. 2001)(holding that the "consuming public" in the context of federal dilution law may be limited to a particular sector.)
[21] 704 F. Supp.2d 305, 321 (S.D.N.Y. 2010).

6

Baker argues that its mark has been in use and registered for over eight years in association with height-adjustable desks and tables. Baker is one of the largest suppliers of this type of office furniture, and NEXT has achieved extensive recognition among the sector of the general public that purchases such office furniture. Thus, Baker maintains that among buyers of variable height working surfaces, NEXT has achieved a famous status.

NTI takes issue with the fact that in its opposition, Baker does not mention or rely on the 2006 Trademark Dilution Revision Act ("TDRA"). NTI informs the court that the TDRA resolved a split among federal courts by clarifying that dilution requires a mark to be "widely recognized by the general consuming public" and that niche fame is not enough. NTI maintains that Baker's dilution claims should be dismissed for failure to state a claim because Baker does not allege that its NEXT mark is famous and widely recognized by the general consuming public, and Baker relies on cases that were decided pre-TDRA (pre-2006) and the jurisprudence that accepted dilution claims based on niche fame.

NTI relies on <u>Leapers, Inc. v. SMTS, LLC d/b/a Tuff Zone, TRARMS, Inc.</u>,[22] and <u>Field of Screams, LLC v. Olney Boys and Girls Comm. Sports. Ass'n.</u> [23] In <u>Leapers</u>, the court noted brands that are instantly recognizable nationwide by the population in general: Audi, Victoria's Secret, Nissan, Nike, Rolex and Pepsi. The court went on further to note non-famous marks which

---

[22] 2014 U.S. Dist. LEXIS 140622, *10 (E.D. Mich. Oct. 3, 2014) ("'niche fame' is insufficient to obtain protection against trademark dilution."
[23] 2011 U.S. Dist. Lexis 25635, *28 (D.Md. Mar 14, 2011)("Fame in a 'niche' market is no longer enough to support a claim under the trademark Dilution Revisions Act.") See also <u>McCarthy on Trademarks and Unfair Competition</u>, § 24:101 (4th Ed.)("The 2006 Revisions contracted the category of marks that could be 'famous' by eliminating the possibility for 'niche fame.'")


include the Texas Longhorns logo, MENSA and Quicken Loans. The court reasoned that even assuming arguendo that "Leapers" was famous in the firearms community, it was implausible that Leapers could support its conclusory assertion that its "marks have become distinctive and famous and are widely recognized by the general consuming public of the United States."[24]

In Field of Screams, the court noted that the trademark dilution statute is meant to protect truly famous marks such as DuPont, Buick and Kodak, but not every brand of local renown,[25] noting that fame in a "niche" market is no longer enough to support a claim under the TDRA.

Baker refers the court to cases it suggests still allow for a claim of fame in a "niche" industry.[26] In NOLA Spice Designs, L.L.C. v. Haydel Enterprises, Inc.[27] the court found that the trademark registrant's marks were not distinctive, thus the district court's grant of summary judgment was proper. The court never reached the issue as to whether the mark was famous under the TDRA.

Baker next refers the court to US Risk Ins. Group, Inc. v. United States Risk Management, LLC,[28] wherein the court considered defendant's motion to dismiss plaintiff's TDRA claims and noted that defendant's position that a mark is distinctive and famous only within a specific market segment such as the insurance market was correct. The court however determined that because defendant made no argument and presented no evidence as to why plaintiff's mark was

---

[24] Leapers, 2014 U.S. Dist. LEXIS at 810.
[25] Field of Streams, 2011 U.S. Cist. LEXIS at *27.
[26] Baker referred this case as well as others at the hearing on February 24, 2016; these cases were not cited in Baker's briefs.
[27] 783 F.3d 527 (5th Cir. 2015).
[28] 2013 WL 4504754 (N.D. Tex. Aug. 20, 2013).

or was not famous in any market, insurance or otherwise, the plaintiff had met its burden in producing competent evidence to show that a fact issue existed with respect to whether its mark was famous. The court remarked that plaintiff submitted evidence such as the amount of time and money plaintiff had spent marketing, promoting and selling its products and services to insurance agents and companies across the country.

Baker refers the court to Who Dat? Inc. v. Rouse's Enterprises, LLC,[29] wherein the court had to decide whether to allow the plaintiff Who Dat? Inc. ("WDI") to file an amended complaint to allege facts to establish claims for trademark dilution and unfair competition. The court concluded that the amended complaint was not futile and could be allowed. In so doing, the court summarily concluded that WDI's proposed amended complaint alleges "not only that its marks are "famous," but further that Rouse has used them in a manner that is likely to cause confusion."[30]

Finally, Baker refers the court to SNOWIZARD, Inc. v. Ron Robinson d/b/a Raggs Sno-Cone Supplies, et al[31] wherein the court denied a Rule 12(b)(6) motion to dismiss because the complaint contained sufficient factual matter to raise the claim of federal trademark dilution above the speculative level. The complaint alleged that because of its exclusive use of the SNOWIZARD mark, "the mark has acquired a high degree of distinctiveness and secondary meaning and has become famous among distributors of snowball products, snowball vendors, and confectioners, who associate the mark with the high-quality products manufactured and sold

---

[29] 2013 WL 3070848 (E.D. La. June 17, 2013).
[30] Id. at *4.
[31] 2011 WL 2681197 (E.D. La. July 8, 2011).

9

by Plaintiff."[32] The inference made included factual allegations that plaintiff's products and mark had been in commerce long enough to become famous and possess distinction by the time defendants commenced use of plaintiff's mark on its products in commerce. SNOWIZARD had been in business and used the SNOWIZARD mark in interstate commerce in connection with its products since 1945, having acquired a Certificate of Registration for the trademark SNOWIZARD for use on and in connection with "food flavorings" on June 2, 2009.

The court has carefully considered Baker's arguments and the allegations in the complaint and concludes that plaintiff has failed to allege that its registered trademark "NEXT" is a mark that is widely recognized by the general consuming public; thus, plaintiff's trademark dilution claim must fail.

*Trademark Infringement Claim Pursuant to Louisiana Unfair Trade Practices and Consumer Protection Law*[33]

NTI maintains that Baker has failed to allege fraudulent behavior as required in support of its claim under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"). A trade practice is deemed unfair under LUTPA "when it offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers,

---

[32] Id. at *11.
[33] La. R.S. 51:1401, et seq.

10

and consumers include business competitors."[34] What constitutes deceptive practices prohibited by the statute is determined on a case-by-case basis.[35]

NTI argues that Baker's allegations that it sent letters to NTI threatening litigation if NTI continued to use the name NextDesk, is not enough to establish unethical, fraudulent, egregious behavior for the purpose of harming competition. NTI suggests that it exercised business judgment to continue its business operations despite these threats.[36] NTI contends that LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions.[37]

Baker, on the other hand, informs the court that it put NTI on notice that it was the registrant of the trademark NEXT, but despite Baker's demands to cease and desist, NTI continued to advertise, manufacture, sell and deliver to customers the very products it knew would deceive Baker's customers using the deceptively similar trademark "NextDesk" associated with variable height tables or desks. Baker maintains that its allegations are sufficient to show that NTI's business practices are likely to deceive buyers as to the source of the products sold under the NextDesk mark.

The court agrees and finds that Baker's failure to allege fraud is not fatal to its claims under LUTPA. As noted by Baker, a practice is unfair when it offends established public policy

---

[34] Arabella Bus Barn, LLC v. Whole Foods Mkt., Inc., 2002 U.S.Dist.LEXIS 9661, *11 (E.D. La. May 23, 2002).
[35] Tubos de Acero de Mexico, S.A. v. American Intern. Inv. Corp., Inc., 292 F.3d 471, 480 (5th Cir. 2002).
[36] Citing Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir. La. 1993)("LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transaction. . . . Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious."(citations omitted).
[37] Monroe Medical Clinic, Inc. v. Hospital Corp. of America, 522 So.2d 1362, 1365(La.App. 1988).

11

and when the practice is unethical, oppressive, unscrupulous, or substantially injurious.[38] The court finds that plaintiff has alleged sufficient facts regarding NTI's conduct, including the use of the NEXT mark after being informed of the potential infringement and being requested to cease and desist from the use of the mark, to proceed with its claims under LUTPA.

## CONCLUSION

For the reasons set forth above, the motion to dismiss will be granted in part and denied in part. The motion will be granted to the extent that the court will dismiss with prejudice plaintiff's claim of trademark dilution under 15 U.S.C. § 1125(c); otherwise, the motion will be denied.

**THUS DONE AND SIGNED** in chambers in Alexandria, Louisiana on the 7th day of March, 2016.

_____
JUDGE JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[38] Levine v. Fist Nat. Bank of Commerce, 948 So.2d 1051, 1065-1066 (La. 2006).